*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

QUINTIN GRILLONE,
*Petitioner,*

*v.*

PEACE OFFICER STANDARDS AND TRAINING COUNCIL,
*Respondent.*

No. 20230513
Heard September 4, 2024
Filed April 3, 2025

On Certiorari to the Utah Court of Appeals

Attorneys:

Jeremy G. Jones, Richard Willie, David H. Culmer, Sandy,
for petitioner

Derek E. Brown, Att'y Gen., Sarah Goldberg, Asst. Solic. Gen.,
Salt Lake City, for respondent

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1   In 2014, Quintin Grillone resigned from his position as a police officer while under investigation for providing false or misleading information to a prosecutor handling a traffic citation against Grillone's mother. The Peace Officer Standards and Training Division (POST) did not learn of the incident until years later when Grillone disclosed it in his application to join a new police department in 2019. Following an investigation, POST initiated disciplinary proceedings. Grillone challenged the proceedings as time-barred, but an administrative law judge rejected that argument and ultimately found that Grillone's

conduct in his mother's case constituted obstruction of justice. The POST Council, the body charged with suspending or revoking peace officer certifications, then retroactively suspended Grillone's certification for three years.

¶2 Grillone sought judicial review by the court of appeals, arguing that the disciplinary proceedings were time-barred by the catch-all statute of limitations for civil actions. *See* UTAH CODE § 78B-2-307(4). Grillone argued that the four-year statute of limitations applied because the statute governing POST disciplinary proceedings refers to them as "civil actions." *Id.* § 53-6-211(3)(c).

¶3 The court of appeals declined to disturb the POST Council's order. Applying its own well-established caselaw, it held that civil statutes of limitation do not apply to administrative disciplinary proceedings absent "specific legislative authority." *See Rogers v. Div. of Real Est.*, 790 P.2d 102, 105 (Utah Ct. App. 1990). It further held that it did not need to determine what "civil action" meant in the POST statute, because the statutory language was insufficiently specific to incorporate the catch-all civil statute of limitations.

¶4 We granted certiorari and now affirm. As an initial matter, we agree with the court of appeals' long-standing precedent that "civil statutes of limitation are inapplicable to administrative disciplinary proceedings" unless the legislature indicates otherwise. *Id.* And we agree with the court of appeals that the POST statute does not indicate that civil statutes of limitation apply to POST disciplinary proceedings.

¶5 When the POST statute states that "[a]ll adjudicative proceedings . . . are civil actions," the legislature is not designating those proceedings as civil actions for all purposes, including statutes of limitation. UTAH CODE § 53-6-211(3)(c). Instead, when read in context, that language distinguishes those proceedings from criminal actions to which different constitutional protections and collateral consequences attach. Because no statute of limitations applies to POST disciplinary proceedings, the court of appeals correctly declined to disturb the POST Council's three-year suspension of Grillone's certification.

**BACKGROUND**

¶6 In July 2020, POST issued a notice of agency action against Grillone with the intent to revoke his peace officer certification. The

2

notice alleged that Grillone violated Utah Code section 53-6-211(1)(c) when he "engage[d] in . . . conduct constituting a state or federal criminal offense." [1]

¶7 The conduct took place in 2014 when Grillone was a Murray City police officer. In uniform, Grillone accompanied his mother to her court proceeding for a traffic citation. Grillone allegedly provided the prosecutor with inaccurate information that the prosecutor then relied on when she decided to dismiss the case.

¶8 Grillone was charged with a misdemeanor for providing false or misleading information, and the Murray City Police Department opened an internal investigation into his conduct. The criminal charge was eventually dismissed, and Grillone resigned before the department completed its investigation. The matter was never referred to POST.

¶9 POST did not learn of the alleged misconduct until 2019 when Grillone applied to reactivate his peace officer certification. In his application, he disclosed the criminal charge and explained the circumstances surrounding it. POST investigated the matter and issued a notice of agency action regarding his status as a peace officer.

¶10 After receiving POST's notice, Grillone first moved to dismiss, arguing that the action was time-barred under the four-year criminal statute of limitations for felony prosecutions. *See* UTAH CODE § 76-1-302(1)(a). An administrative law judge (ALJ) denied the motion, determining that the statutory language makes clear that the criminal code does not apply to POST's administrative proceedings. *See id.* § 76-1-107(3) (stating the criminal code "does not bar, suspend, or otherwise affect any right or . . . remedy authorized by law to be recovered or enforced in a[n] . . . administrative proceeding").

¶11 Next, Grillone filed a motion for judgment on the pleadings, arguing that the civil statutes of limitation, *see id.* § 78B-2-102; *see also id.* § 78B-2-307(4), barred the proceedings

---

[1] The notice cited Utah Code section 53-6-211(1)(d), the location of the relevant provision at the time. *See* UTAH CODE § 53-6-211(1)(d) (2020). The legislature has since moved the relevant language of the provision to subsection 53-6-211(1)(c) with no substantive changes material to this case. *Id.* § 53-6-211(1)(c) (2025). For convenience, we cite the current subsection of the code.

because the statute governing POST disciplinary actions states that "[a]ll adjudicative proceedings under this section are *civil actions*, notwithstanding whether the issue in the adjudicative proceeding is a violation of statute that may be prosecuted criminally," *id.* § 53-6-211(3)(c) (emphasis added). The ALJ denied the motion, concluding that the statute of limitations did not apply because "civil actions" was used as a "generic term" to "differentiate the POST proceedings from criminal proceedings" and that nothing in the statute indicated "that it was the intent of the legislature to designate the POST proceeding as anything other than a[n] administrative adjudication process."

¶12   After a formal hearing, the ALJ determined that POST had proved by clear and convincing evidence that Grillone's conduct during his mother's court proceeding constituted obstruction of justice. The POST Council adopted the ALJ's recommendations and issued a final order suspending Grillone's certification for three years. The POST Council counted the time Grillone spent "separated from [his] department" toward his suspension, which meant that by the time the POST Council issued the order the suspension had already run in full.

¶13   Grillone sought review in the court of appeals. *See Grillone v. Peace Officer Standards & Training Council*, 2023 UT App 35, 529 P.3d 1026. That court has long held that "[i]n the absence of specific legislative authority, civil statutes of limitation are inapplicable to administrative disciplinary proceedings." *Rogers v. Div. of Real Est.*, 790 P.2d 102, 105 (Utah Ct. App. 1990); *see also Phillips v. Dep't of Com.*, 2017 UT App 84, ¶¶ 12–15, 397 P.3d 863; *Morgan v. Dep't of Com.*, 2017 UT App 225, ¶¶ 7–10, 414 P.3d 501. But Grillone argued that "POST disciplinary proceedings are exempted from this general rule by virtue of Utah Code section 53-6-211(3)(c)," which refers to the proceedings as "civil actions." *Grillone*, 2023 UT App 35, ¶ 10. Grillone contended that use of the term "civil actions" is a "clear and unambiguous" indication of the legislature's intent that the civil statutes of limitation apply to POST proceedings. *Id.*

¶14   The court of appeals rejected Grillone's argument and determined that because the statute "does not satisfy the 'specific legislative authority' requirement of *Rogers*," the civil statutes of limitation do not apply. *Id.* ¶¶ 15–16. We granted Grillone's petition for certiorari.

4

**ISSUE AND STANDARD OF REVIEW**

¶15　The parties dispute whether the civil statutes of limitation apply to POST disciplinary proceedings. The question of whether a statute of limitations in Utah's judicial code applies to these administrative proceedings is a question of law, which we review for correctness. *See Moshier v. Fisher*, 2019 UT 46, ¶ 6, 449 P.3d 145 ("The application of a statute of limitations . . . [is a] question[] of law, which we review for correctness."); *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 ("We review questions of statutory interpretation for correctness, affording no deference to the [court of appeals'] legal conclusions." (cleaned up)).

**ANALYSIS**

¶16　The statute governing POST disciplinary proceedings states, "All adjudicative proceedings under this section are civil actions, notwithstanding whether the issue in the adjudicative proceeding is a violation of statute that may be prosecuted criminally." UTAH CODE § 53-6-211(3)(c). Grillone argues that by defining the disciplinary proceeding as a "civil action," the legislature incorporated title 78B, chapter 2 of Utah's judicial code, which provides the statutes of limitation for "[c]ivil actions." *Id.* § 78B-2-102. Grillone argues that the judicial code's four-year statute of limitations, *see id.* § 78B-2-307(4), commonly referred to as the catch-all statute of limitations, bars the disciplinary proceedings against him because they were brought more than four years after the conduct at issue.

¶17　In rejecting this argument, the court of appeals concluded that it was unnecessary to resolve what the legislature meant when it said that all POST adjudicative proceedings are "civil actions." *Grillone v. Peace Officer Standards & Training Council*, 2023 UT App 35, ¶ 12, 529 P.3d 1026. Instead, the court held that "regardless of the definition of 'civil actions' as used in section 53-6-211(3)(c)," the reference was not "sufficiently specific to make the four-year catch-all statute of limitations applicable to POST disciplinary proceedings." *Id.*

¶18　To review the court of appeals' decision, we first address the underlying premise that civil statutes of limitation are ordinarily inapplicable to administrative disciplinary proceedings. We reach the same conclusion that the court of appeals reached more than thirty years ago: "civil statutes of limitation are inapplicable to administrative disciplinary proceedings" unless the

legislature indicates otherwise. *Rogers v. Div. of Real Est.*, 790 P.2d 102, 105 (Utah Ct. App. 1990).

¶19 Next, we apply that rule to determine whether the statute governing POST disciplinary proceedings incorporates the civil statutes of limitation. In doing so, we reject the court of appeals' requirement that "specific legislative authority" is necessary to apply a civil statute of limitations to an administrative disciplinary proceeding. *See id.* The legislature does not normally need to express its intent with any particular degree of specificity. We then look to the language upon which Grillone relies—the use of the term "civil action," UTAH CODE § 53-6-211(3)(c), and conclude that, in context, it does not indicate that POST disciplinary proceedings are civil actions for statute of limitations purposes.

I. THE CIVIL STATUTES OF LIMITATION ORDINARILY DO NOT APPLY TO ADMINISTRATIVE DISCIPLINARY PROCEEDINGS

¶20 Before turning to the language of the POST disciplinary statute, we consider whether civil statutes of limitation are generally inapplicable to administrative disciplinary proceedings. Although this court has never considered the question, the court of appeals has long held that civil statutes of limitation do not apply to administrative disciplinary proceedings unless the legislature indicates otherwise. We agree with that conclusion.

¶21 The court of appeals first faced this issue in *Rogers v. Division of Real Estate*, 790 P.2d 102 (Utah Ct. App. 1990). There, a real estate broker appealed an agency order revoking her license due to misconduct. *Id.* at 103–04. The broker argued that the administrative agency's action was barred by the judicial code's four-year catch-all statute of limitations. *Id.* at 104–05. The court disagreed and held that "[i]n the absence of specific legislative authority, civil statutes of limitation are inapplicable to administrative disciplinary proceedings."[2] *Id.* at 105. The court

---

[2] As we understand it, when *Rogers* held that the civil statutes of limitation do not apply absent "specific legislative authority," it meant that those statutes do not apply unless the legislature has incorporated them for a specific type of administrative disciplinary proceeding. But the court of appeals subsequently interpreted the phrase "specific legislative authority" to mean that the statutory language incorporating the statutes of limitation must be "sufficiently specific." *Grillone v. Peace Officer Standards & Training*

(continued . . .)

reasoned that administrative disciplinary hearings are not civil proceedings but instead are "special, somewhat unique, statutory proceeding[s], in which the disciplinary board investigates the conduct of a member of the profession to determine if disciplinary action is appropriate to maintain sound professional standards of conduct and protect the public." *Id.* at 105–06. The court concluded that because "administrative disciplinary proceedings are not 'actions,'" they are not subject to the statutes of limitation in the judicial code. *Id.* at 106. This rule from *Rogers* has stood for decades, and in recent years the court of appeals has reaffirmed it. *See, e.g., Phillips v. Dep't of Com.*, 2017 UT App 84, ¶¶ 12–15, 397 P.3d 863; *Morgan v. Dep't of Com.*, 2017 UT App 225, ¶¶ 5–10, 414 P.3d 501.

¶22 We agree with the court of appeals that the civil statutes of limitation apply only to civil actions filed in the courts, unless the legislature indicates otherwise. The civil statutes of limitation are found in title 78B, chapter 2. It explains that "[c]ivil actions may be commenced only within the periods prescribed in this chapter." UTAH CODE § 78B-2-102. The term "action" is defined in the same chapter as including "counterclaims and cross-complaints and all other civil actions in which affirmative relief is sought." *Id.* § 78B-2-101(1). Grillone argues that the phrase "all other civil actions in which affirmative relief is sought" is broad enough to include administrative disciplinary proceedings in which the agency seeks to revoke a license or certification.

¶23 We agree with POST that this language refers to civil *court* actions. The doctrine of *ejusdem generis* is instructive here. This doctrine of statutory interpretation "applies in instances where an inexhaustive enumeration of particular or specific terms is followed by a general term or terms that suggest a class." *State ex rel. A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228. It "declares that in order to give meaning to the general term, the general term is understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *Id.*

¶24 The specific terms here—"counterclaims and cross-complaints"—are claims for affirmative relief that must be brought in pleadings filed with a court. The more general term—"and all

---

*Council*, 2023 UT App 35, ¶ 12, 529 P.3d 1026. Because the phrase has generated confusion, we abandon the "specific legislative authority" language in adopting *Rogers*' core holding.

other civil actions in which affirmative relief is sought"—is best understood as restricted to actions of that same nature, meaning affirmative claims brought in pleadings filed with a court. Counterclaims and cross-complaints are specifically highlighted to clarify that the term "action" applies not only to claims brought by the party who initiated the suit, but also to affirmative claims raised by other parties in the same proceeding. The general phrase that follows does not expand the definition of "action" to matters outside of court, but includes any claims, however labeled, "that could have been maintained independently of the plaintiff's action." *See Relief*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "affirmative relief" as "relief sought by a defendant by raising a counterclaim or cross-claim that could have been maintained independently of the plaintiff's action").

¶25 This reading also comports with the ordinary understanding of "civil action," which is "[a]n action brought to enforce, redress, or protect a private or civil right." *Action*, BLACK'S LAW DICTIONARY (12th ed. 2024). Administrative disciplinary proceedings are not actions to "enforce, redress, or protect a private or civil right." *Id.* Rather, they are statutorily created proceedings that authorize a profession's disciplinary board to investigate conduct of the profession's members and, if necessary, to carry out punishment to protect both the integrity of the profession and the public. *See Rogers*, 790 P.2d at 106.

¶26 Our conclusion that administrative disciplinary proceedings are not "civil actions" to which the judicial code's statutes of limitation apply finds further support in the prior construction canon. That canon of statutory interpretation posits that "where a word or phrase in a statute has been authoritatively interpreted by the highest court in a jurisdiction, or has been given a uniform interpretation by inferior courts[,] . . . a later version of a statute perpetuating the wording is presumed to carry forward the established judicial interpretation." *MacDonald v. MacDonald*, 2018 UT 48, ¶ 22, 430 P.3d 612 (cleaned up) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322 (2012)). Said another way, "where a legislature amends a portion of a statute but leaves other portions unamended, or re-enacts them without change, the legislature is presumed to have been satisfied with prior judicial constructions of the unchanged portions of the statute and to have adopted them as consistent with its own intent." *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶ 43, 556 P.3d 21 (cleaned up).

¶27 Thirty-five years ago, the court of appeals held in *Rogers* that the statutes of limitation for civil actions do not apply to administrative disciplinary proceedings in the absence of legislative authority to that effect. In that 1990 opinion, the court interpreted Utah Code section 78-12-1, which stated that "civil actions may be commenced only within the periods prescribed in this chapter, after the cause of action has accrued, except in specific cases where a different limitation is prescribed by statute." *Rogers*, 790 P.2d at 105 (cleaned up) (quoting UTAH CODE § 78-12-1 (1987)). In 2008, the legislature recodified the judicial code. *See* Title 78 Recodification & Revision, H.B. 78 § 623, 2008 Leg., Gen. Sess. (Utah 2008). As part of those efforts, it lifted the language from section 78-12-1—the section that the *Rogers* court interpreted—and transplanted it verbatim into the newly enacted section 78B-2-102. *Id.* It also imported section 78B-2-101's definition of "action" from the prior version of the judicial code with no substantive changes. *See id.* § 622. Despite the long-standing rule in *Rogers*, the legislature did not see fit to amend either provision in a way that would extend the civil statutes of limitation to administrative disciplinary proceedings. We presume that it left the relevant language untouched because it was aware of and satisfied with *Rogers*' interpretation. *See Mulligan*, 2024 UT 22, ¶ 44.

¶28 Finally, our interpretation is bolstered by the structure of the Utah Code. *See Day v. Meek*, 1999 UT 28, ¶ 16 n.6, 976 P.2d 1202 ("[W]e cannot interpret the statute we are charged with construing without looking to the overall context of the statutory structure at issue."). The civil statutes of limitation are found in the judicial code, title 78B. Apart from its provisions on alternative dispute resolution, the statutes contained in the judicial code all relate to actions that take place in court.

¶29 Administrative disciplinary proceedings, on the other hand, are generally governed by the Administrative Procedures Act (APA) in title 63G, chapter 4. *See* UTAH CODE § 63G-4-102(1)(a). The APA does not incorporate the judicial code's limitation periods. And the Division of Professional Licensing Act (DPLA), which governs the regulation of multiple professions, contains its own limitation period. *See id.* § 58-1-401(6). Specifically, the DPLA provides that generally, "[t]he division may not take disciplinary action against a person for unprofessional or unlawful conduct more than 10 years after the occurrence of the conduct," *id.* § 58-1-401(6)(b)(i), and must "initiate[] an adjudicative proceeding regarding the conduct within four years after the conduct is

reported to the division," *id.* § 58-1-401(6)(a). If the statutes of limitation in the judicial code applied to administrative disciplinary proceedings, there would be no need for the DPLA to include a separate limitation period. This supports a default rule that civil statutes of limitation do not ordinarily apply to administrative disciplinary proceedings.

¶30  For these reasons, we hold that the statutes of limitation for civil actions in the judicial code do not apply to administrative disciplinary proceedings unless the legislature has incorporated them by statute. When looking at the plain language of a statute governing the relevant proceeding, there must be an indication that the legislature intended the statutes of limitation to apply. We next turn to applying that rule to the case before us.

## II. SECTION 53-6-211(3)(c) DOES NOT SUBJECT POST ADJUDICATIVE PROCEEDINGS TO THE CATCH-ALL STATUTE OF LIMITATIONS

¶31  Grillone argues that by characterizing POST adjudicative proceedings as "civil actions," the POST statute incorporates the judicial code's civil statutes of limitation. Under the catch-all statute of limitations, actions "for relief not otherwise provided for by law" must be brought within four years. UTAH CODE § 78B-2-307(4). Because the conduct that gave rise to these disciplinary proceedings occurred more than four years before the notice of agency action, Grillone argues that the court of appeals should have held that the proceedings were time-barred.

¶32  In determining whether the catch-all statute of limitations applied in this case, the court of appeals defined "the threshold issue presented for review [as] whether section 53-6-211(3)(c) is sufficiently specific to make the four-year catch-all statute of limitations applicable to POST disciplinary proceedings." *Grillone v. Peace Officer Standards & Training Council*, 2023 UT App 35, ¶ 12, 529 P.3d 1026. Because that section has no "specific reference" to any statute of limitations, the court found it unnecessary to "definitively resolve" the parties' debate over whether the section's reference to "civil actions" was intended to incorporate the civil statutes of limitation. *Id.* ¶¶ 12, 15. The court reasoned that,

> even assuming that Grillone's definition of "civil actions" as used in section 53-6-211(3)(c) is correct, such a circuitous route for imposing the catch-all statute of limitations on POST disciplinary proceedings . . . without so much as a reference to

that section or to statutes of limitation[] more generally, cannot be said to be specific.

*Id.* ¶ 15.

¶33 Grillone argues that the panel's insistence on 'specific legislative authority' is flawed, as it contradicts the well-established judicial principle that courts should interpret statutes based on their plain language. He argues that the court erred when it "bypass[ed] the plain language of the statute" merely because it deemed the language to be insufficiently specific. On this point, we agree with Grillone.

¶34 To determine whether the catch-all statute of limitations applies to POST proceedings, we must resolve the dispute over the meaning of "civil actions" in section 53-6-211(3)(c). Grillone has made a plausible argument that the legislature incorporated the civil statutes of limitation by defining a POST adjudication as a "civil action." It is not enough to say that the statute is insufficiently specific. When we interpret statutory language, "our primary goal is to evince" the legislature's "true intent and purpose." *State v. Davis*, 2011 UT 57, ¶ 21, 266 P.3d 765 (cleaned up). "The legislature's failure to speak more clearly tells us little of relevance to our interpretation of the words that it adopted." *In re Est. of Hannifin*, 2013 UT 46, ¶ 26, 311 P.3d 1016. So long as we can ascertain its intent, the legislature is not normally required to legislate with any particular degree of specificity.

¶35 To ascertain the legislature's intent, a court must engage with the language of the statute at issue. The provision at issue here states in full that "[a]ll adjudicative proceedings under this section are civil actions, notwithstanding whether the issue in the adjudicative proceeding is a violation of statute that may be prosecuted criminally." UTAH CODE § 53-6-211(3)(c). In context, we hold that characterizing POST adjudicative proceedings as "civil actions" does not reflect an intent to incorporate the civil statutes of limitation. Instead, it distinguishes those proceedings from criminal actions to which different protections and collateral consequences attach.

¶36 We look to the context of the larger statutory scheme in reaching this conclusion because when our court engages in statutory interpretation, we do not look at the pertinent provision in isolation. *See Hertzske v. Snyder*, 2017 UT 4, ¶ 12, 390 P.3d 307. We instead examine the statute's "plain language in light of the relevant context of the statute." *Williamson v. MGS by Design, Inc.*,

2022 UT 40, ¶ 13, 521 P.3d 866 (cleaned up). A specific provision "susceptible to competing interpretations may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible." *Buck v. Utah State Tax Comm'n*, 2022 UT 11, ¶ 27, 506 P.3d 584 (cleaned up). Correctly ascertaining the legislature's intent "requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Hertzske*, 2017 UT 4, ¶ 12 (cleaned up).

¶37 In isolation, the phrase "[a]ll adjudicative proceedings under this section are civil actions," UTAH CODE § 53-6-211(3)(c), does not tell us whether POST proceedings are civil actions for all purposes, for statutes of limitation purposes, or for some other purpose. If POST proceedings are civil actions for all purposes, they would be subject not only to the civil limitation periods, but also to a host of other statutes and court rules governing civil actions. *See, e.g.*, *id.* § 78B-5-825(1) ("In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . ."); UTAH R. CIV. P. 3(a) ("A civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons together with a copy of the complaint in accordance with Rule 4."). But as Grillone recognizes, administrative proceedings are "governed by specific rules (here the [APA] and POST's own administrative rules)." As relevant here, for example, agency actions to "revoke, suspend, modify, annul, withdraw, or amend an authority, right, or license" are subject to the APA's provisions "except as otherwise provided by a statute superseding" the APA by "explicit reference." UTAH CODE § 63G-4-102(1). Without an "explicit reference" exempting POST proceedings from the APA, we surmise that the legislature did not intend to designate POST proceedings as civil actions for all purposes.

¶38 We next consider whether the statutory language means that POST proceedings are civil actions for the purpose of the judicial code's limitation periods. Grillone argues that the legislature signaled that intent by using the term "civil actions," the same term used in the statutes of limitation. But that term pervades the Utah Code. Unless the legislature intended to make POST proceedings civil actions for all purposes, we would expect some textual clue that the designation related to the statutes of limitation in particular. As the court of appeals pointed out, the legislature

has signaled an intent to incorporate the civil statutes of limitation in other parts of the code. "For example, the Employment Securities Act provides that an '[a]ction required for the collection of sums due under this chapter' by the Department of Workforce Services 'is subject to the applicable limitations of actions under Title 78B, Chapter 2, Statutes of Limitations.'" *Grillone*, 2023 UT App 35, ¶ 14 (alteration in original) (quoting UTAH CODE § 35A-4-305(1)(g) (2019)). While this language has the advantage of making the statute's meaning unmistakable, we agree with Grillone that no particular language or degree of specificity is required so long as we can ascertain the legislature's intent from the statutory text. But here we see no textual evidence that the legislature intended "civil action" to refer to the statutes of limitation.

¶39 On the other hand, there is ample textual evidence that by referring to POST proceedings as "civil actions," the legislature intended to distinguish them from criminal proceedings. The civil-action designation is immediately followed by the phrase "notwithstanding whether the issue in the adjudicative proceeding is a violation of statute that may be prosecuted criminally." UTAH CODE § 53-6-211(3)(c). In context, this provision indicates that the procedural protections and collateral consequences that attach to criminal actions do not apply to POST proceedings, which are limited to imposing civil penalties. This reading is supported by the placement of the "civil action" language in subsection (3), which addresses the adjudicative process, including notice, an opportunity to be heard, and the standard of proof—all of which differ from the rights afforded a defendant charged in a criminal action.

¶40 Based on this textual evidence, we conclude that the legislature labeled POST proceedings "civil actions" not for the purpose of incorporating statutes of limitation, but to make clear that POST proceedings are not criminal in nature even if they involve allegations of criminal conduct. Because the POST statute does not incorporate the four-year catch-all statute of limitations or any other limitation period, the proceedings against Grillone were not time-barred. Therefore, the court of appeals correctly declined to disturb the POST Council's order.

## CONCLUSION

¶41 A civil statute of limitations does not apply to administrative disciplinary proceedings absent statutory language to the contrary. The statutory language designating POST

proceedings as "civil actions" does not incorporate the civil limitation periods but rather distinguishes those proceedings from criminal actions. Because the civil statutes of limitation do not apply to POST proceedings, we affirm.

———————